01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09   HENRY WESSELIUS,                                    )   Case No. C06-571-RSM-JPD
                                                         )
10                    Plaintiff,                         )
                                                         )
11        v.                                             )
                                                         )   REPORT AND RECOMMENDATION
12   LINDA S. McMAHON, Acting Commissioner, )
     Social Security Administration,[1]                  )
13                                                       )
                      Defendant.                         )
14   _____ )

15        Plaintiff Henry Wesselius appeals the final decision of the Commissioner of the Social

16   Security Administration ("Commissioner"), which denied plaintiff's application for Disability

17   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

18   XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*, after a hearing before

19   an Administrative Law Judge ("ALJ").   For the reasons set forth below, the Court

20   recommends that the Commissioner's decision be REVERSED and REMANDED for further

21   proceedings not inconsistent with the Court's instructions.

22                            I.  FACTS AND PROCEDURAL HISTORY

23        Plaintiff is a forty-seven year old divorced man with a high school education.

24

25        [1]  On January 20, 2007, Linda S. McMahon became the Acting Commissioner of the

26   Social Security Administration.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of
     Civil Procedure, Linda S. McMahon is substituted for Commissioner Jo Anne B. Barnhart as
     the defendant in this suit.

REPORT AND RECOMMENDATION
PAGE - 1

01  Administrative Record ("AR") at 494-95.  He has previously worked as a janitor, forklift

02  operator, dairy farm worker, warehouseman, telemarketer, dishwasher, laundry worker, and

03  casino maintenance man.  AR at 81-87, 493.  Plaintiff was last gainfully employed in 2002.  AR

04  at 466, 488.  He has a history of drug and alcohol abuse, but has participated in rehabilitation

05  programs and asserts that he no longer has a substance abuse problem.  AR at 476.

06

07          On October 24, 2002, plaintiff applied for DIB and SSI benefits based on physical and

08  mental impairments, alleging an onset date of July 5, 2002.  AR at 66-72, 440.  Plaintiff asserts

09  that several mental impairments, including as bipolar disorder, psychotic disorders, personality

10  disorders, affective disorders, organic brain disorders, substance abuse disorder, and borderline

11  intellectual functioning, as well as physical disorders including seizure disorders, hepatitis, and

12  arthritis have kept him from obtaining and maintaining employment of any kind.  AR at 72,

13  101, 114-23, 127-34, 468-69; Dkt. No. 13.

14          The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 32-

15  35, 38-40.  On March 7, 2005, a disability hearing was held before the ALJ, who eventually

16  concluded that plaintiff was not disabled and denied benefits based on his finding that plaintiff

17  could perform a specific job existing in significant numbers in the national economy.  AR at 21-

18  29.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council,

19  AR at 6-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is

20  defined by 42 U.S.C. § 405(g).  On May 15, 2006, plaintiff timely filed the present action

21  challenging the Commissioner's decision.  Dkt. No. 3.

22                              II.  JURISDICTION

23          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

24  405(g) and 1383(c)(3).

25                          III.  STANDARD OF REVIEW

26          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

REPORT AND RECOMMENDATION
PAGE - 2

01    social security benefits when the ALJ's findings are based on legal error or not supported by

02    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

03    Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

04    such relevant evidence that a reasonable mind might accept as adequate to support a

05    conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881

06    F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, settling

07    conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*

08    *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to meticulously

09    examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment

10    for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When

11    the evidence of record is susceptible to more than one rational interpretation, it is the

12    Commissioner's conclusions that must be upheld. *Id.*

13                               IV.  EVALUATING DISABILITY

14        As the claimant, Mr. Wesselius bears the burden of proving that he is disabled within

15    the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113

16    (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful

17    activity" due to a physical or mental impairment which has lasted, or is expected to last, for a

18    continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20

19    C.F.R. §§ 404.1505(a), 416.905(a). A claimant is disabled under the Act only if his

20    impairments are of such severity that he is unable to do his previous work, and cannot,

21    considering his age, education, and work experience, engage in any other substantial gainful

22    activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also*

23    *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

24        The Commissioner has established a five-step sequential evaluation process for

25    determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. §§

26    404.1520, 416.920. The claimant bears the burden of proof during steps one to four. At step

REPORT AND RECOMMENDATION
PAGE - 3

01 five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not

02 disabled at any step in the sequence, the inquiry ends without need to consider subsequent

03 steps.

04      Step one asks whether the claimant is presently engaged in "substantial gainful

05 activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he

06 is not, the Commissioner proceeds to step two. At step two, the claimant must establish that

07 he has one or more medically severe impairments, or combination of impairments, that limit his

08 physical or mental ability to do basic work activities. If the claimant does not have such

09 impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does

10 have a severe impairment, the Commissioner moves to step three to determine whether that

11 impairment meets or equals any of the listed impairments described in the regulations. 20

12 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals a listing

13 for the twelve-month duration requirement is disabled. *Id.*

14      When the claimant's impairment neither meets nor equals one of the impairments listed

15 in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

16 residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

17 Commissioner evaluates the physical and mental demands of the claimant's past relevant work

18 to determine whether he can still perform that work. *Id.* If the claimant is able to perform his

19 past relevant work, he is not disabled; if the opposite is true, the burden shifts to the

20 Commissioner at step five to show that the claimant can perform some other work that exists

21 in significant numbers in the national economy, taking into consideration the claimant's RFC,

22 age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

23 Commissioner finds the claimant is unable to perform other work, the claimant is disabled and

24 benefits may be awarded.

25 ───────────────

26    [2] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. §
404.1572.

REPORT AND RECOMMENDATION
PAGE - 4

01                              V.  DECISION BELOW

02          On May 27, 2005, the ALJ issued a decision denying plaintiff's request for benefits,

03  which found:

04          1.      The claimant met the insured status requirements of the Act on June 5,
                    2002, alleged onset date, and he has sufficient quarters of coverage to
05                  remain insured through at least March 31, 2008.

06          2.      The claimant has not engaged in substantial gainful activity since the
                    alleged onset date.
07
08          3.      The claimant has depression, anxiety, and a substance abuse disorder.
                    These impairments are severe, but they do not meet or equal the criteria
                    of any impairment listed in Appendix No. 1.
09
10          4.      The claimant's statements concerning his impairments and limitations
                    are not entirely credible.

11          5.      The claimant retains the residual functional capacity to perform medium
                    work. He can walk ½ mile, stand 6 hours in an 8-hour workday; walk 4
12                  hours in a workday, and sit two hours in a workday.  He has no
                    postural, manipulative, or environmental restrictions.  He can
13                  understand and remember simple and detailed tasks.  He can sustain
                    work activity during a 40-hour workweek, most of the time.  He gets
14                  along with others and has the ability to take precautions as needed.

15          6.      The claimant's impairments and limitations preclude his past relevant
                    work.
16
17          7.      The claimant was born on July 5, 1959; he has at least a high-school
                    education.

18          8.      If the claimant could perform a full range of medium work, 20 C.F.R.
                    §§404.1569, 416.969 and rule 203.29 of Appendix 2 would direct a
19                  conclusion that the claimant is not disabled.

20          9.      Although claimant is unable to perform a full range of medium work, he
                    is capable of working as a night patrol worker.  He is therefore not
21                  disabled within a framework of the above-cited rules.

22          10.     The claimant is not under a disability as defined in the Social Security
                    Act.
23
24  AR at 28.

                                VI.  ISSUES ON APPEAL
25
26          The parties vigorously dispute the ALJ's step two finding that plaintiff had or did not

    have the "severe" impairments of depression, anxiety, and substance abuse order, as well as the

REPORT AND RECOMMENDATION
PAGE - 5

01 ALJ's pivotal step five finding that plaintiff could perform other work existing in significant

02 numbers in the national economy, i.e., as a "night patrol worker." AR at 28.   There are three

03 primary allegations of error:

> 1.   Did the ALJ Fail to Provide Legally Sufficient Reasons for Rejecting the
>       Medical Opinion Evidence of Dr. Willner, Dr. Avery, Dr. Horton, and
>       Dr. Valeithian?
>
> 2.   Did the ALJ Fail to Follow the "Special Technique" for Evaluating the Severity
>       of Mental Impairments?
>
> 3.   Did the ALJ Err in Assessing the Plaintiff's Credibility?[3]

## VII.   DISCUSSION

A.   The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting the Medical
     Opinion Evidence of Dr. Willner, Dr. Avery, and Dr. Horton

12       Relevant medical evaluations of the following physicians were before the ALJ at the

13 time of plaintiff's March 7, 2005, disability hearing:  treating physician Dr. Andrew Willner

14 (AR at 135-47, 174-81, 188-201); treating physician Dr. Marc Avery (AR at 182-85); and

15 examining physician Dr. John Horton (AR at 388-409).   The ALJ also reviewed reports of

16 consulting physicians Drs. Michael Rosenfield and Nandan Kumar (AR at 127-30, 131-34),

17 certain counselors at Valley Cities Counseling and Consultation (AR at 202-387), and several

18 other non-examining state agency physicians and psychologists.  *See* AR at 150-164, 165-70.

19 A final examination, completed by Dr. Cherie Valeithian, was submitted to the Appeals

20 Council shortly after the ALJ issued his decision. AR at 451-59.   The plaintiff's argues that the

---

[3]   In addition to the foregoing assignments of error, Plaintiff spent considerable effort arguing that the ALJ erred by not making a transferable skills finding to justify his determination of non-disability at step five, and consequently, erred by finding that plaintiff could perform work as a "night patrol worker" despite finding that plaintiff had no transferrable skills.  The Commissioner did not substantively respond to this argument, and the Court eschews an exhaustive analysis of its merits.  Put simply, with respect to persons who are "younger individuals" as defined the Act (i.e., 18-49 years of age), the issue of transferability of skills is not critical to a determination of disability.  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.20, 201.22, 203.29-.31.

REPORT AND RECOMMENDATION
PAGE - 6

01 ALJ failed to give proper weight to the opinions of Drs. Willner, Avery, Horton, and

02 Valeithian, and rejected those opinions without a "clear and convincing" or "specific and

03 legitimate" basis. Dkt. No. 13 at 8-11. The Commissioner disagrees, insists that those medical

04 conclusions are controverted, and argues that the ALJ's reasons for rejecting them were

05 specifically outlined and sufficiently legitimate. Dkt. No. 15 at 6-9.

06        As a matter of law, more weight is given to a treating physician's opinion than to that

07 of a nontreating physician because a treating physician "is employed to cure and has a greater

08 opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751.

09 "Likewise, greater weight is accorded to the opinion of an examining physician than a

10 non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

11 However, under certain circumstances, an examining physician's opinion can be rejected,

12 whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects

13 the opinion of a treating or examining physician, the ALJ must give clear and convincing

14 reasons for doing so if the opinion is not contradicted by other evidence, and specific and

15 legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be

16 done by setting out a detailed and thorough summary of the facts and conflicting clinical

17 evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881

18 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his

19 own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing

20 *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times

21 be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

22        1.    *Dr. Willner*

23        Dr. Willner, as plaintiff's primary treating physician, examined the plaintiff on

24 numerous occasions prior to February 20, 2004, and December 3, 2004. *See* AR at 135-47

25 (chronicling multiple visits as far back as July 2002 for, among other things: fever, chest

26 congestion, flu, diarrhea, dyspepsia, sinusitis, psychosis, bipolar disease, paranoid thoughts,

REPORT AND RECOMMENDATION
PAGE - 7

01 depression, and schizophrenia vs. bipolar disorder).  However, the latter two examination

02 dates, as well as a November 12, 2002 summary, bear primary significance to the present case.

03 AR at 135-47, 174-81, 188-201.  In a November 12, 2002 letter to the Division of Disability

04 Determination Services, Dr. Willner noted that plaintiff was "an unfortunate male with . . .

05 hepatitis, bipolar disease, seizure disorders and polyarthritis probably associated with

06 degenerative changes as well as the immune arthritis associated with hepatitis."  AR at 141.

07         On February 20, 2004, Dr. Willner diagnosed plaintiff with personality disorder, seizure

08 disorder, hepatitis B and C, and hypertension.  AR at 179.  He determined that plaintiff was

09 "chronically mentally ill."  AR at 180.  Dr. Willner's evaluation of the plaintiff was recorded, in

10 part, on a Psychological/Psychiatric Evaluation form provided by the Department of Social and

11 Health Services (DSHS), wherein he found that plaintiff had high degrees of limitation in many

12 areas of mental functioning, including markedly severe social withdrawal, moderately

13 depressed mood, thought disorder, and paranoid behavior.  AR at 179.  Dr. Willner also found

14 significant functional limitations imposed by plaintiff's diagnosed conditions (particularly his

15 personality and thought disorders), including a severe limitation in the ability to exercise

16 judgment and make decisions, a marked limitation in the ability to respond appropriately to and

17 tolerate the pressure and expectations of a normal work setting, moderate limitations in six

18 areas,[4] and a mild limitation in the ability to understand, remember and follow simple

19 instructions.  AR at 180.  At plaintiff's disability hearing, the Vocational Expert (VE) testified

20 that an individual who suffered from the above-mentioned functional impairments, particularly

21 the marked impairment in ability to respond appropriately to work pressures in a normal work

22 setting, would not be able to maintain competitive employment.  AR at 504-05.    Similar

23 conclusions were made after Dr. Willner's December 3, 2004 examination of the plaintiff, the

24

25         [4] These areas included (1) the ability to understand, remember and follow complex
26 instructions; (2) the ability to learn new tasks; (3) the ability to perform routine tasks, (4) the
ability to relate appropriately to co-workers and supervisors; (5) the ability to interact
appropriately in public contacts; and (6) the ability to care for oneself.  AR at 180.

REPORT AND RECOMMENDATION
PAGE - 8

01  result of which was recorded by a brief medical summary and use of a Psychiatric Review

02  Technique Form (PRTF) provided by the SSA.  *See* AR at 178-81, 188-201.  Specifically, Dr.

03  Willner diagnosed plaintiff with personality disorder, organic mental disorders, seizure

04  disorder, hepatitis, schizophrenic and psychotic disorders, and substance addiction disorder.

05  AR at 188-97.  As to functional limitations, Dr. Willner found that plaintiff had marked

06  difficulties in maintaining social functioning, moderate difficulties in maintaining concentration,

07  persistence or pace, mild restrictions in activities of daily living, and three repeated episodes of

08  decompensation, each of extended duration.  AR at 198.

09       The ALJ rejected Dr. Willner's February 2004 and December 2004 opinions on the

10  grounds that they were rendered on insufficient "check-box forms without supporting

11  observations" and were "contradicted by the claimant's significantly improved functioning

12  noted by Valley Cities counselors" and by Dr. Willner's October 29, 2002 office notes.  AR at

13  24-25 (citing Exs. 20F and 3F:5, AR at 139).

14       The ALJ erred.  Even assuming that Dr. Willner's February 2004 and December 2004

15  opinions were controverted, the ALJ's rejection of those opinions was neither specific nor

16  legitimate; nor was it supported by substantial evidence.  Check-the-box type forms may be

17  entitled to less weight when they are not adequately explained or supported by treatment notes,

18  but that was not the case here.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  The

19  DSHS and SSA forms utilized by Dr. Willner may appear uninformative to the layperson, but

20  such forms are concrete, meaningful, and highly probative in the social security context,

21  especially when completed by a physician who has treated plaintiff on dozens of occasions and

22  gave a diagnosis consistent with a majority of all other physicians who treated or examined

23  plaintiff.  Moreover, neither the ALJ nor the VE expressed any failure to comprehend the

24  information contained in those forms.  *See* 20 C.F.R. § 404.1512(e)(1) ("When the evidence

25  [the Commissioner] receive[s] from [the claimant's] treating physician or psychologist or other

26  medical source is inadequate for [the Commissioner] to determine whether [the claimant is]

01  disabled," it will "recontact [that] medical source").  Furthermore, the forms contained several

02  handwritten notes and were consistent with several pages of Dr. Willner's notes taken over the

03  course of several years.

04        In addition, while the ALJ concluded that Dr. Willner's office notes from prior visits

05  contradicted the February 2004 and December 2004 opinions, the notes the ALJ cited do not

06  rationally support this conclusion.  AR at 25 (citing "3F:5," located at AR at 139)

07  (summarizing plaintiff's December 20, 2002 visit for paranoid thoughts and request for various

08  injections and prescriptions "to cleanse his body"); *see Thomas*, 278 F.3d at 954 ("Where the

09  evidence is susceptible to more than one *rational* interpretation, one of which supports the

10  ALJ's decision, the ALJ's conclusion must be upheld.") (emphasis added).  Even the most

11  persuasive office memo noticed by this Court—not cited by the ALJ—merely explains that

12  plaintiff "[i]s anxious to get on treatment for his mood depressions . . . has long-term treatment

13  with Nortriptyline but nowhere near the success absent the mood stabilizer Lithium that he

14  requests today."  AR at 142.  A physician's notation that a patient's symptoms are *not* treated

15  successfully with current medications likely can only bolster, not diminish, that physician's

16  finding of severe impairments.  Regardless, it certainly does not constitute a specific or

17  legitimate reason supporting rejection of Dr. Willner's opinion in this circumstance.

18  Moreover, contrary to the Commissioner's assertions, nowhere in the record does Dr. Willner

19  state that plaintiff's mental impairments were "well controlled by medication."  Dkt. No. 15 at

20  8.[5]  "[O]nly by . . .  mischaracterizing [Dr. Willner's] statements can one create any apparent

21  inconsistency" or limitation in his diagnoses.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

22

23

24        [5]  To be sure, the office notes referenced by the Commissioner for this proposition
     do not even address mental impairments.  Rather, the notes reflect treatment for nausea,
     cramping, and diarrhea.  AR at 138.  Moreover, contrary to the arguments of the
25   Commissioner, nowhere on page 139 of the administrative record did Dr. Willner report the
     absence of "any physical or mental impairment."  Dkt. No. 15 at 8.  Nor was this finding
26   made on page 140, which consists of a half-sized piece of paper evidencing a Dr. James E.
     Clark's treatment of plaintiff for sinusitis.  AR at 140.

01  1996).  The ALJ will have the opportunity to specifically clarify and readdress any allegedly

02  conflicting statements by Dr. Willner on remand.

03         Finally, to the extent that the ALJ found (and persists in finding on remand) that

04  plaintiff's mental functioning "improved" after extended counseling at Valley Cities from July

05  2003 to December 2004 (AR at 318, 272),[6] the ALJ should determine on remand whether this

06  information alone justifies a finding of nondisability for the entire period adjudicated, or

07  whether a closed period of disability is appropriate.  *Moore v. Commissioner*, 278 F.3d 920,

08  924 (9th Cir. 2002).

09                  2.    *Dr. Avery*

10         Plaintiff was evaluated by treating psychiatrist Dr. Avery of Valley Cities Counseling

11  and Consultation in April 2004.  Dr. Avery's evaluation was recorded on a

12  Psychological/Psychiatric Evaluation form provided by DSHS.  He opined that plaintiff was

13  chronically mentally ill, and diagnosed dysthymic disorder and possible dementia and borderline

14  intellectual functioning.[7]  Dr. Avery's mental functioning findings were strikingly similar to that

15  of Dr. Willner, including marked social withdrawal and moderate levels of depressed mood,

16  thought disorder, and paranoid behavior.  AR at 183.  He also found marked motor

17  retardation, moderate motor agitation and verbal expressions of anxiety or fear, and mild

18  degrees of suicidal trends, expressions of anger, hallucinations, hyperactivity, and physical

19  complaints.  AR at 183.  Dr. Avery's functional limitations assessment was also similar to Dr.

20  Willner's.  For example, Dr. Avery also found marked limitations in plaintiff's ability to

21  respond appropriately to and tolerate the pressure and expectations of a normal work setting,

22  and identical moderate limitations as that of Dr. Willner.  AR at 184.  Dr. Avery further

23

24         [6]  The "significantly improved functioning" referred to by the ALJ appears to have come
    from isolated usages of the terms "much improvement," "improving," and "focus improving"
25  in approximately five of the thirty-nine weekly "Group Participation" forms completed by
    Valley Cities counselor Dr. Paul T. Kern.  *See* AR at 272, 280, 302, 318, 320.
26

       [7]  Dr. Avery attributed plaintiff's dementia to chronic substance abuse.  AR at 198.

REPORT AND RECOMMENDATION
PAGE - 11

01 explained that while prescribed medication could reduce the symptoms of plaintiff's mental

02 disorders, it could "not affect day to day work due to [plaintiff's] limited intellectual

03 functioning." AR at 184.

04       The ALJ rejected Dr. Avery's opinions in one sentence, noting that there was no

05 testing to support Dr. Avery's diagnosis of borderline intellectual functioning. AR at 24.

06 While the ALJ stated that he gave Dr. Avery's mental and social functioning assessments

07 "some weight," none of Dr. Avery's findings were adopted by the ALJ. Assuming *arguendo*

08 that Dr. Avery's opinion was controverted by that of the state agency physicians, the ALJ was

09 nonetheless required to analyze the opinion. *Andrews*, 53 F.3d at 1043. The ALJ had the

10 discretion to reject Dr. Avery's opinion "in favor of the conflicting opinion of another

11 examining physician," but only after "findings setting forth specific, legitimate reasons for

12 doing so that are based on substantial evidence in the record." *Connett v. Barnhart*, 340 F.3d

13 871, 874 (9th Cir. 2003). The ALJ failed to do so; his reasons were neither specific nor

14 legitimate. On remand, the ALJ should reassess the findings of Dr. Avery who is, after all, one

15 of the Valley City counselors, the opinions of which the ALJ purportedly assigned greater

16 weight to than plaintiff's other sources. *See, e.g.*, AR at 25.

17              3.    *Dr. Horton*

18       In January 2005, examining psychiatrist Dr. Horton completed a detailed report, a

19 medical source statement, and a PRTF after his examination of the plaintiff. AR at 388-409.

20 Dr. Horton gave DSM-IV Axis I diagnoses of schizophrenia, schizoaffective disorder,

21 substance-abuse persisting amnestic disorder, and substance dependence in early full or full

22 sustained remission; Axis III diagnoses included seizure disorder and hypertension. AR at 393.

23 He reported a current Global Assessment of Functioning (GAF) score of 45. AR at 393.[8]  Dr.

24

25       [8]    The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's

26 judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N,
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000).
A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic

01 Horton's written report stated that plaintiff would "have difficulty understanding and carrying

02 out even simple instructions, . . . difficulty relating to others in a work environment," and

03 concluded that plaintiff "d[id] not seem capable of withstanding the stress and pressures related

04 to work activity at this time because of his mental problems . . . ."  AR at 393-94; *see also* AR

05 at 394 ("Given the long duration of his problems and the fact that he has been in ongoing

06 treating, his prognosis seems very poor.").  Dr. Horton's medical source statement found

07 marked (or "severe") limitations in nine of ten mental and social functioning categories.  *See*

08 AR at 395-96.  His PRTF revealed similar conclusions and, like that of Dr. Willner, determined

09 that plaintiff satisfied the requirements of at least two step-three mental impairment listings.

10 AR at 397.  Regarding "B Criteria" listings, Dr. Horton found that plaintiff had marked

11 difficulties in every area of functioning, including activities of daily living, maintaining

12 concentration, persistence or pace, and maintaining social functioning.  AR at 407.

13         The ALJ rejected Dr. Horton's assessment because "it was based on a one-time

14 examination," appeared inconsistent with the claimant's observed functioning by the Valley

15 Cities counselors, and failed to specify the level of functional difficulty plaintiff encountered

16 with regard to simple instructions, relating to others, and managing stress and work pressures.

17 AR at 25.

18         This, too, was reversible error.  First, contrary to the ALJ's assertions, Dr. Horton *did*

19 specify the level of restrictions associated with each relevant work-related mental activity. That

20 is, after his clinical interview and review of all medical records, Dr. Horton's medical source

21 statement found *marked* limitations in plaintiff's ability to (1) understand and remember short,

22 simple instructions or detailed instructions; (2) carry out the same; (3) interact appropriately

23 with the public, supervisors, or co-workers; (4) respond appropriately to work pressures in a

24 usual work setting; and (5) respond appropriately to changes in a normal work setting.  AR at

25 ─────────────────────

26 attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34.  A GAF score
of 41-50 indicates "[s]erious symptoms . . .  [or] serious impairment in social, occupational, or
school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*

REPORT AND RECOMMENDATION
PAGE - 13

01  395-96.  To the extent this assessment was overlooked, or to the extent the conclusion of

02  unspecificity was made by the ALJ himself, it must be corrected upon remand, as an ALJ

03  cannot substitute his own opinion for that of a medical expert by ignoring, disregarding, or

04  manipulating the evidence of record.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

05  Second, the Court finds that the "observed functioning" of the plaintiff by Valley Cities

06  counselors, standing alone, does not contain the specificity necessary to outweigh the opinions

07  of Dr. Horton.  *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) ("The opinion of a

08  nonexamining physician cannot by itself constitute substantial evidence that justifies the

09  rejection of the opinion of . . . an examining physician.") (internal quotation omitted).[9]  Third

10  and finally, the fact that Dr Horton performed a one-time examination is not a legitimate

11  reason for rejecting his opinions.  Examining physicians are paid to perform one-time

12  examinations.  Furthermore, Dr. Horton has never been cast by either party as a treating

13  physician, whose opinions are entitled to "special weight" and accorded significant deference.

14  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

15                    4.    *Dr. Valeithian*

16          The results of Dr. Valeithian's June 2005 and July 2005 diagnostic assessments,

17  psychological/psychiatric evaluation, and comprehensive trail-making test were, in many ways,

18  more profound than the opinions of Drs. Willner, Avery, or Horton.  The Court finds that this

19  new medical evidence is material, in that there exists a "reasonabl[e] possibility that the new

20  evidence would have changed the outcome of the [disability] determination." *Bruton*, 268

21  F.3d at 827 (internal quotation omitted, first alteration added by *Bruton* court).  However, in

22  light of the foregoing errors, it is not necessary to explore plaintiff's argument regarding Dr.

23  _____

24          [9]  This is especially true where the consultative Valley Cities physicians, unlike Drs.
    Willner, Avery, and Horton, failed to include a complete assessment of plaintiff's functional
25  limitations as required by the Social Security Act.  *See* 20 C.F.R. § 404.1519n(c)(6) ("A
    complete consultative examination . . . *should* include the following elements . . . in cases of
26  mental impairment(s)[:]  the opinion of the medical source about [the claimant's] ability to
    understand, to carry out and remember instructions, and to respond appropriately to
    supervision, coworkers and work pressures in a work setting.") (emphasis added).

REPORT AND RECOMMENDATION
PAGE - 14

01  Valeithian in detail.  The Commissioner is correct that the ALJ did not have the benefit of Dr.

02  Valeithian's opinion before issuing his May 7, 2005 decision.  He will, however, have ample

03  opportunity to address it on remand.

04

05      B.   <u>The ALJ Failed to Properly Follow the "Special Technique" For Evaluating the Severity of Mental Impairments</u>

06      Plaintiff argues that the ALJ committed reversible error by not evaluating plaintiff's

07  mental impairments pursuant to 20 C.F.R. § 404.1520a, rendering his decision unreviewable.

08  Dkt. No. 13 at 17.  The Commissioner insists that the ALJ adopted the findings of the state

09  agency physicians to satisfy this requirement.  Dkt. No. 15 at 12.

10      In evaluating the severity of mental impairments, a "special technique" must be

11  performed at each level of administrative review.  20 C.F.R. §§ 404,1520a(a), 416.920a(a).  In

12  *Gutierrez v. Apfel*, 199 F.3d 1048 (9th Cir. 2002), the Ninth Circuit held that an ALJ's failure

13  to follow the § 1520a technique requires reversal when, as here, the claimant has a "colorable

14  claim of a mental impairment."  *Id.* at 1051 (construing an earlier version of § 1520a under

15  which the ALJ was required to fill out and attach a PRTF).  However, amendments to § 1520a

16  postdating *Gutierrez* have given ALJs greater discretion in deciding how best to publish the

17  mandated findings, but even under the amended version, the regulation requires the ALJ to

18  follow the special technique and to "document application of the technique in the[ir] decision."

19  20 C.F.R. § 404.1520a(e).  Specifically, the regulation requires the ALJ's decision to "include

20  a specific finding as to the degree of mental limitation in each of the functional areas described"

21  in § 1520a(c).  20 C.F.R. § 404.1520a(e)(2).  These areas include activities of daily living;

22  social functioning; concentration, persistence and pace; and episodes of decompensation.  *Id.* §

23  404.1520a(c).

24      The ALJ did not include specific findings related to the four functional areas described

25  in § 1520a(c).  Furthermore, while the ALJ purported to give the state agency physicians'

26  "psychological assessment" some weight, it is unclear whether such findings were adopted, and

if so, to what degree.  On remand, the ALJ should properly evaluate and document each of

REPORT AND RECOMMENDATION
PAGE - 15

01 | plaintiff's colorable mental impairments in accordance with 20 C.F.R. § 404.1520a, particularly

02 | in light of the new weight due the opinions of Drs. Willner, Avery, Horton, and Valeithian.

03 |

04 |     C.  <u>The ALJ Should Re-evaluate the Plaintiff's Credibility on Remand</u>

05 |     Because this case is being remanded for the reasons detailed above, the Court eschews

06 | a detailed analysis of the ALJ's credibility determination.  In light of the fact that the Court has

07 | found that the ALJ failed to properly evaluate the opinions of Drs. Willner, Avery and Horton,

08 | the ALJ's credibility finding is also reversed and the issue remanded.  After reevaluating the

09 | medical evidence of record, as expanded by opinions of Dr. Valeithian, the ALJ will be in a

10 | better position to evaluate the plaintiff's credibility.

11 |             VIII.  CONCLUSION

12 |     Because the ALJ erred by failing to provide legally sufficient reasons for rejecting the

13 | medical opinions of Dr. Willner, Dr. Avery, and Dr. Horton, and erred by failing to properly

14 | follow the "special technique" for evaluating relevant mental impairments, this case should be

15 | REVERSED and REMANDED for further proceedings not inconsistent with this Report and

16 | Recommendation.  In particular, the ALJ should reevaluate the medical evidence regarding

17 | plaintiff's mental and physical impairments (including the reports of Dr. Valeithian), reassess

18 | and give proper weight to the opinions of Drs. Willner, Avery, Horton, assess and give proper

19 | weight to the new opinion of Dr. Valeithian, apply the "special technique" for evaluating

20 | mental impairments under 20 C.F.R. § 416.920a, reevaluate plaintiff's RFC, and reassess

21 | plaintiff's credibility.  To the extent that the plaintiff's impairments and/or limitations are

22 | modified on remand, the ALJ should propound a new hypothetical to the VE that incorporates

23 | the erroneously rejected testimony; moreover, if necessary, the ALJ should also follow the

24 | proper method for evaluating substance abuse, as outlined in *Bustamante v. Massanari*, 262

25 | F.3d 949 (9th Cir. 2001).  With this information, the ALJ should then apply all appropriate

26 | steps of the sequential evaluation process to determine whether plaintiff's severe impairments

  render him disabled for purposes of Titles II and XVI of the Social Security Act.  Should the

REPORT AND RECOMMENDATION
PAGE - 16

01  ALJ once again find that the plaintiff is not entitled to disability benefits going forward, the

02  ALJ should determine whether the plaintiff is nonetheless entitled to benefits for any past,

03  closed period.  A proposed order accompanies this Report and Recommendation.

04          DATED this 12th day of February, 2007.

05                                                      _James P. Donohue_

06                                                      JAMES P. DONOHUE
                                                        United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 17